# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STACEY I. MILLER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CASE NO. 3:23-cv-171 |
| | ) |
| SCOTT SILVERTHORNE, | ) |
| SILVERTHORNE CHEVROLET, INC., | ) |
| and SILVERTHORNE AUTO | ) |
| GROUP, INC. | ) |
| Defendant | ) |

### *PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND REQUEST FOR TRIAL BY JURY*

Plaintiff Stacey I. Miller (hereinafter "Miller"), by her counsel, and for her Complaint against Defendants Scott Silverthorne, Silverthorne Chevrolet, Inc., and Silverthorne Auto Group, Inc. (hereinafter collectively "Silverthorne"), states as follows:

### I. FACTUAL ALLEGATIONS

1.  Miller is a resident of the State of Illinois and is domiciled in Oblong, Crawford County, Illinois.

2.  Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. are separately incorporated; however, the two businesses are operated jointly by Defendant Scott Silverthorne and exist as a "joint employer" as that term has been defined by the Courts and the FLSA itself. To provide examples, Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. have the same primary owner and operator, Defendant Scott Silverthorne. Similarly, Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. are managed by the same General Manager, Ron Murphy. Plaintiff, Stacey Miller herself, worked for both Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne

1

Auto Group, Inc. and, in fact, was transferred from Silverthorne Chevrolet, Inc. to Silverthorne Auto Group, Inc. in approximately July 2021.  Her pay at the two dealerships was the same.  Each employer exercised total control over Ms. Miller's employment.  Each (1) had the power to hire and fire Ms. Miller, (2) each supervised and controlled Ms. Miller's work schedule and conditions of employment, (3) each equally determined the rate and method of payment of Ms. Miller's wages, and (4) each equally maintained employment records for Ms. Miller.  This was particularly true as both Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. were being run by the same owner, Defendant Scott Silverthorne, and same general manager on a day to day basis.  Miller brings her claims under the Fair Labor Standards Act against all three defendants, Scott Silverthorne, Silverthorne Chevrolet, Inc., and Silverthorne Auto Group, Inc., as a joint employer under the FLSA.

3. Similarly, Miller is bringing her claims under Title VII of the Civil Rights Act of 1964 against both Defendants Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. as a joint employer. Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. are separately incorporated; however, the two businesses are operated jointly by Scott Silverthorne and exist as a "joint employer" as that term has been defined by the Courts and the FLSA itself. To provide examples, Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. have the same primary owner and operator, Scott Silverthorne. Similarly, Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. are managed by the same General Manager, Ron Murphy. Plaintiff Stacey Miller herself, worked for both Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. and, in fact, was transferred from Silverthorne Chevrolet, Inc. to Silverthorne Auto Group, Inc. in approximately July 2021.  Her pay at the two dealerships was the same. Each employer

exercised total control over Ms. Miller's employment. Each (1) had the power to hire and fire Ms. Miller, (2) each supervised and controlled Ms. Miller's work schedule and conditions of employment, (3) each equally determined the rate and method of payment of Ms. Miller's wages, and (4) each equally maintained employment records for Ms. Miller. This was particularly true as both Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. were being run by the same owner, Scott Silverthorne, and same general manager on a day to day basis.

4. Silverthorne is headquartered in and has its principal place of business in Robinson, Crawford County, Illinois.

5. Silverthorne hired Miller to work as Service Advisor in the Service Department at the Silverthorne Chevrolet dealership in September 2020.

6. During the course of her employment, Miller began experiencing sexual harassment at work from two of her male managers and complained to Silverthorne. Despite Miller making multiple reports to the owner, Scott Silverthorne, and the General Manager, Ron Murphy, neither did anything to protect Miller, investigate the sexually harassing behavior, or to discipline the offending employees.

7. Silverthorne's owner and general manager not only refused to take action to stop the managers from sexually harassing Stacey Miller, but Scott Silverthorne and Ron Murphy also worsened matters by, essentially, blaming Miller for the harassment by telling Miller things, to the effect of, that's what you should expect "when you look like that."

8. Ms. Miller's work environment became so hostile with sexual harassment that Miller was mentally and physically affected. Ms. Miller sought medical treatment and had to outfit with a heart monitor for a period of time. Miller later learned that she was not having heart events, but instead was suffering panic attacks. In addition to the panic attacks, the ongoing

sexual harassment caused Ms. Miller significant anxiety and depression. The harassment caused Miller to suffer significant work stress and stress in her personal relationships.

9. While Silverthorne management did not investigate or take disciplinary action against Miller's sexual harassers, Silverthorne transferred Miller from her service position in the Chevrolet dealership to the less desirable position, as a business development person at Silverthorne Auto. This transfer failed to stop the harassment, and Miller continued to report sexual harassment and seek help from the owner and general manager until the end of her employment.

10. In late October 2021, Stacey Miller was sexually assaulted at the Silverthorne Auto dealership when Silverthorne employee, Luke Tyre, entered Ms. Miller's office, propositioned her, grabbed her, and pinned her to a wall while attempting to kiss her. Ms. Miller was able to escape Tyre without further harm and reported him to Silverthorne management, as she had with the other incidents of sexual harassment. Invariably, Silverthorne's management did nothing at all to fire or punish Luke Tyre, nor did it take action to protect Stacey Miller.

11. Ultimately, Silverthorne retaliated and discriminated against Stacey Miller by firing her shortly following this incident. General Manager Ron Murphy called Miller to a meeting where he claimed the Silverthorne business was suffering financially and a layoff was necessary. At this point, Mr. Murphy told Miller he was going to have to let her go and claimed that Miller's "numbers" had decreased.

12. The "layoff" was a lie, particularly as Miller was the only employee who lost her job. No one else was laid off. The layoff excuse was also a lie, as Miller's work productivity had actually increased. Her "numbers" weren't low. They had increased. Moreover, to dispel this

false claim about a layoff, Miller was not the least senior Silverthorne employee (e.g., last hired, first fired). Ms. Miller was also certainly more productive than many of her Silverthorne coworkers who were not similarly laid off or terminated. Clearly, Miller was fired by Silverthorne management because Silverthorne management thought it would be easier to fire Miller to end her sexual harassment complaints rather than take actual steps to stop the harassment or punish the actual harassers.

13. Stacy Miller's discharge followed her last complaint of sex harassment (against Luke Tyre) within a very short time, thereby raising an inference of retaliatory motivation. Miller is pursuing claims of sexual harassment (failure to take action to cure a hostile work environment), retaliation, and sex discrimination under Title VII of the Civil Rights Act of 1964. She is seeking all available damages, equitable relief, injunctive relief, and payment of her attorney's fees, costs, and expenses.

14. While employed as a business development person with Silverthorne, Miller was paid wages primarily on an hourly basis and treated as a non-exempt employee.

15. Throughout her employment at Silverthorne Auto, Miller was a non-exempt employee who was compensated by Silverthorne on an hourly-paid basis. At the time of her termination, Miller's base rate of pay was $14.00 per hour. During her employment with Silverthorne, Miller regularly worked significant overtime hours (in excess of forty hours in a seven day work week). Silverthorne underpaid its overtime compensation to Miller as a result of an unlawful practice by which Silverthorne is failing to include all Miller's earned wages in its calculation her regular rates of pay and, in so doing, is failing to include all earned wages in its calculation of her overtime rate of pay. Every time in that Miller earned compensation in the form of a commission/earned bonus in her role as business developer and was subjected to

Silverthorne's unlawful compensation scheme, violated both the Illinois Minimum Wage Law and the FLSA. Miller specifically alleges that this overtime violation occurred at times she was in her business development job. She makes this distinction compared to her time in the service advisor position.

16.     To explain generally, Miller regularly earned a portion of their wages through earned commission or bonus payments. These commission/bonus payments are earned wages paid on a regular basis. The commission/bonus payments are promised beforehand, expected and are in no way gratuitous or discretionary.  Silverthorne is paying overtime compensation to these same hourly paid employees, but it is not including in the regular rate of pay the wages it pays as a commission or bonus. In so doing, Silverthorne is not paying overtime wages at the full overtime rate of pay.  This refusal to include the commission/bonus payments in the calculation of hourly employees' regular rates of pay violates the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law and results in underpayment of overtime compensation.

17.     As a specific example, Miller worked overtime (working at least 8.71 overtime hours) and earned overtime compensation of at least $182.91 in the two week pay period ending April 16, 2021. During that same pay period, Miller was also paid an earned commission/bonus for the month totaling an additional $1,200.00. That $1,200.00 amount was not factored into the overtime weeks Miller worked in April 2021, nor was it reconciled and factored into the overtime work weeks in March 2021. At no point was this earned commission/bonus wage factored into Miller's regular rate of pay for any work week or work weeks in any month and it was never factored into the calculation of Miller's overtime rate of pay in any work week or work weeks. Silverthorne underpaid overtime wages by failing to factor the $1,200.00 earned commission/bonus into the regular rate of pay in the example cited in this paragraph.

She will need time clock records in discovery, but as additional examples from the period of time Miller was not a service advisor and was working in her business development job, Miller worked overtime hours during the two week pay periods that resulted in checks paid on August 20, 2021 and on October 15, 2021. Her overtime pay in both of those pay periods did not include earned bonus/commission pay of $850.00 paid in each pay period. Her regular rate should have included this $850.00 sum in each of the two pay periods and her overtime compensation should have been greater, but Silverthorne failed to include the earned income in the overtime rate calculation, resulting in overtime violations of the FLSA and Illinois Minimum Wage Law in each of the pay periods.

18. Silverthorne has intentionally, knowingly, with reckless disregard and systematically violated Miller's rights to earned overtime through Silverthorne's unlawful overtime calculation and payment policies which has resulted in significant underpayment of overtime to Miller.

## II.   JURISDICTION AND VENUE

19. This Court has jurisdiction over Miller's Title VII claims under 28 USC § 1331, as those Title VII sexual harassment, retaliation and discrimination claims, as well as the FLSA overtime claims, raise questions of federal law. Additionally, this Court has supplemental jurisdiction over Miller's Illinois Minimum Wage Law claim, as those claims share a common basis of fact with Miller's FLSA claims. 28 USC § 1367.

20. This Court is the appropriate venue for this cause of action as Miller worked for Silverthorne in Crawford County, Illinois, and most or all of the illegal activity occurred in the Southern District of Illinois.  28 USC § 1391.

## III.   ADMINISTRATIVE PROCEDURES

21. Miller has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit. Miller received her Notice of Right to Sue from the Equal Employment Opportunity Commission dated January 11, 2023.

## IV. STATEMENT OF CLAIMS

### A. TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

22. Miller alleges and incorporates herein by reference paragraphs 1 through 21 above.

23. As detailed above, Silverthorne is liable for discriminating against Miller, for retaliating against Miller, for allowing a hostile work environment to exist to Miller's detriment by failing to respond to Miller's reports and complaints about sexual harassment against her, and for terminating Miller from employment, all in violation of Title VII of the Civil Rights Act of 1964. Silverthorne has intentionally and knowingly violated Miller's protected rights under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*.

24. As a direct and proximate result of Silverthorne's discriminatory and retaliatory practices, Miller has found it necessary to retain the services of an attorney and is therefore entitled to her reasonable attorney's fees, costs, and expenses in this matter.

25. Miller is seeking from Silverthorne any and all available damages under Title VII, including, but not limited to, all back pay and benefits, front pay and benefits, all available compensatory and punitive damages, her attorney's fees, expenses and costs, and any and all other equitable relief available to Miller.

### B. FAIR LABOR STANDARDS ACT CLAIM

26. Miller incorporates herein by reference paragraphs 1 through 25 above.

27. At all relevant times, Miller was an individual employee within the meaning of

the FLSA, 29 U.S.C. § 203(e)(1).

28. Silverthorne Chevrolet, Inc. is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). Silverthorne Chevrolet, Inc. is a "person" as that term is defined under the FLSA.

29. Silverthorne Auto Group, Inc. is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). Silverthorne Auto Group, Inc. is a "person" as that term is defined under the FLSA.

30. Scott Silverthorne is an owner, officer and/or shareholder of Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. Silverthorne exercised operational control over Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc.; controlled significant business functions of Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc.; and acted on behalf of and in the interest of Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. in devising, directing, implementing, and supervising the wage and hour practices and policies challenged in this Complaint. Scott Silverthorne is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). Scott Silverthorne is a "person" as that term is defined under the FLSA.

31. At all relevant times, Miller was engaged in interstate commerce as defined by the FLSA, 29 U.S.C. § 207.

32. At all relevant times, Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. have been enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. §203(r).

33. At all relevant times, Silverthorne Chevrolet, Inc. has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1), in that the enterprise has had employees engaged in

commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

34.     At all relevant times, Silverthorne Auto Group, Inc. has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

35.     Silverthorne, jointly and severally, violated Miller's rights to be properly paid full overtime wages in a manner required by the FLSA.

36.     Silverthorne has repeatedly violated the FLSA's overtime provisions while Miller was in the business development person role by not paying Miller at the full, required overtime compensation rate for all hours worked over 40 in a work week.

37.     Silverthorne's failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects Silverthorne to a three-year statute of limitations.

38.     Miller seeks all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Silverthorne's violations of their rights under the Fair Labor Standards Act.

### C.    CLAIMS UNDER ILLINOIS MINIMUM WAGE LAW

39. Miller incorporates herein by reference paragraphs 1 through 38 above.

40. Silverthorne is subject to and covered by the provisions of the Illinois Minimum Wage Law.

41. Silverthorne is an "employer," as that term is defined by the Illinois Minimum Wage Law. Defendants Scott Silverthorne, Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. are a joint employer under the Illinois Minimum Wage Law and are jointly and severally liable to Miller for violations of the Illinois Minimum Wage Law.

42. Miller is an "employee" as the term is defined by the Illinois Minimum Wage Law and all are protected by the provisions of the Illinois Minimum Wage Law.

43. Silverthorne committed overtime violations under the Illinois Minimum Wage Law against Miller in her role as a business development person, as earned, regularly paid commission/bonus wages that were earned should have been included in employees' regular rates of pay and included in any calculation of overtime compensation due to Miller for each and every week in which both overtime compensation and commission/bonus wages were owed or paid.

44. Because it failed to include earned commission/bonus wages in its calculation of overtime compensation, Silverthorne failed to pay Miller at the full and correct overtime rate of pay, as required by the Illinois Minimum Wage Law in any and all calendar weeks in which Miller worked, in her business development role, in excess of forty (40) hours.

45. Pursuant to 820 ILCS 105/12(a), Miller is entitled to recover all unpaid overtime wages, treble the amount of unpaid overtime wages together with costs and such reasonable attorney's fees as my be allowed by the Court, and damages of 5% of the amount of any such

unpaid overtime wages for each month following the date of payment during which such underpayments remain unpaid.

      46.     Under the Illinois Minimum Wage Law, Silverthorne is subject to a three year statute of limitations.

## V.    PRAYER FOR RELIEF

WHEREFORE, Miller respectfully requests that the Court enter judgment against Silverthorne, and issue to her all available relief, including, but not limited to, the following:

      1.     All damages available under Title VII of the Civil Rights Act of 1964, including all back pay and benefits, reinstatement or front pay and benefits, all available compensatory damages, all available punitive damages, any and all other equitable relief, and payment of her reasonable attorney's fees, costs and expenses;

      2.     All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

      3.     All damages available under the Illinois Minimum Wage Law, see 820 ILCS 105/12(a), including all unpaid overtime wages, treble the amount of unpaid overtime wages together with costs and such reasonable attorney's fees as my be allowed by the Court, and damages of 5% of the amount of any such unpaid overtime wages for each month following the date of payment during which such underpayments remain unpaid. All reasonable attorney's fees and expenses;

      4.     All unpaid and underpaid wages;

      5.     All reasonable attorney's fees and expenses;

      6.     Costs

      7.     Prejudgment interest, if available; and

8.  Any and all other relief just and proper in the premises.

Respectfully Submitted,

HASSLER KONDRAS MILLER LLP

/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry St.
Terre Haute, IN 47807
(812) 232-9691
(812) 234-2881 Fax
kondras@hkmlawfirm.com

## REQUEST FOR TRIAL BY JURY

Comes now Plaintiff Stacey I. Miller, by her counsel, and hereby requests a trial by jury, on all issues which may be tried to a jury.

HASSLER KONDRAS MILLER LLP

/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, Indiana 47807
(812)232-9691
(812) 234-2881 Fax
kondras@hkmlawfirm.com